BARBARA COONEY et al., Respondents-Appellants, v EAST NASSAU MEDICAL GROUP et al., Appellants-Respondents, et al., Defendants.

First Department, April 28, 1988

### APPEARANCES OF COUNSEL

*Owen O. Hoberman* of counsel *(Hoberman & Sussman, P. C.,* attorneys), for respondents-appellants.

*Carol Tocci* of counsel *(Jane M. Wieder* and *Kenneth Mauro* with her on the brief; *Schiavetti, Begos & Nicholson,* attorneys), for appellants-respondents.

### OPINION OF THE COURT

MURPHY, P. J.

After a traverse hearing, the Special Referee concluded that plaintiffs had succeeded in obtaining personal jurisdiction over defendant partnership East Nassau Medical Group, but had failed to obtain jurisdiction over defendant Dr. Alfred E. Cave. These findings were confirmed by the court which accordingly severed and dismissed the action as against Cave but denied defendant East Nassau Medical Group's motion to dismiss the action as against it.

We conclude that the Referee's report was in error both as to its finding that jurisdiction had been obtained over the partnership and as to its finding that it had not been obtained over defendant Cave, and that the court's order incorporating these erroneous findings should be modified accordingly.

It is undisputed that the process by which plaintiffs would have bound East Nassau Medical Group, in the present action, was left by the process server with Mrs. Hazel Buehlman, the partnership's executive secretary. It is further undisputed that Mrs. Buehlman, not being an East Nassau partner, was not authorized pursuant to CPLR 310 to receive service for the partnership. Nor is there any question that Mrs. Buehlman was not authorized to receive service for the partnership pursuant to any other statutory provision. As it is well established that "[s]ervice is only effective * * * when it is made pursuant to the appropriate method authorized by the CPLR" *(Markoff v South Nassau Community Hosp.,* 61 NY2d 283, 288; *see also, Feinstein v Bergner,* 48 NY2d 234, 241; *McDonald v Ames Supply Co.,* 22 NY2d 111, 115-116), it follows that the service here at issue was invalid and, therefore, ineffective to bring the partnership within the court's

jurisdiction. Two theories are, however, offered to save the service intended for the partnership.

The first of these relies heavily upon *Fashion Page v Zurich Ins. Co.* (50 NY2d 265). There, the Court of Appeals sustained service on a corporation upon the ground that the process server had permissibly relied on corporate employees to identify the proper person to accept process on the corporation's behalf and had served that person "in a manner which, objectively viewed, [was] calculated to give the corporation fair notice" *(supra,* at 272). Plaintiffs would extend the reasoning of *Fashion Page* to embrace partnerships. Thus, it is urged that a process server may rely on partnership employees to identify the proper person to be served.

A close reading of *Fashion Page (supra),* however, discloses that the approach taken there was meant to address a special problem confronting process servers attempting to serve corporations. A corporation must, of course, be served through an agent. And, although the statute identifies specifically certain corporate personnel who may act as agents for the receipt of corporate process, it also provides generally that process may be served on "any * * * agent authorized by appointment or by law to receive service". (CPLR 311 [1].) As the Court of Appeals has noted, appointment of an agent pursuant to CPLR 311 (1) need not be attended by formalities such as those set forth in CPLR 318. *(Fashion Page v Zurich Ins. Co., supra,* at 272.) The statute then expressly recognizes that a corporation may informally designate virtually anyone to receive process in its behalf. Thus drawn, the statute does not inform the process server of precisely who, and, more importantly who may not, accept service. The process server on entering corporate offices may, therefore, find it necessary to inquire as to the identity of the proper recipient of corporate process and will generally have little reason to discount representations of authority made to him by corporate employees *(supra,* at 273). It was then in recognition of the circumstance that "the process server cannot be expected to know the corporation's internal practices" *(supra,* at 272) pursuant to which an agent for the receipt of process may be appointed that the *Fashion Page* court went on to hold that "[r]eliance may be based on the corporate employees to identify the proper person to accept service" *(supra,* at 272).

Key to a proper understanding of *Fashion Page (supra)* is the fact that the statute expressly renders internal corporate practices respecting the receipt of service, which practices

may be initially unknown to the process server, relevant to the process server's discharge of his or her duties. The same is not true of CPLR 310 governing service upon partnerships. Unlike corporations, partnerships need not be served through agents, and, leaving aside CPLR 318 which is not here relevant, the applicable statute makes no allowance for any but personal service: CPLR 310 provides in its entirety, "Personal service upon persons conducting a business as a partnership may be made by personally serving the summons within the state upon any one of them." Thus, as the process server sets about serving a partnership he knows exactly who may be served, i.e., a partner, and has no need to rely on partnership personnel to identify others authorized to act in the partners' stead. Indeed, there is ordinarily no reason for a process server to suppose that anyone but a partner will be so authorized. As noted, the statute provides no basis for such a supposition. Nor does it seem likely that partners would generally wish to waive personal service and so facilitate the commencement of proceedings against themselves. The factors justifying a process server's reliance upon representations of authority made to him in the course of serving a corporation simply do not obtain where the object of service is a partnership and for this reason the essential holding of *Fashion Page* (*supra,* at 272), namely, that "[r]eliance may be based on the corporate employees to identify the proper person to accept service" may not be transposed so as to apply where service upon a partnership is at issue.

There is, in any case, no indication that the plaintiffs' process server was in any way misled. Although he was directed by a receptionist to Mrs. Buehlman, the record gives no evidence of any inquiry by him respecting Mrs. Buehlman's authority. Nor is there any indication that Mrs. Buehlman made any representation of authority to him. Indeed, the record before the court does not disclose that East Nassau attempted in any way to interfere with the proper delivery of process. To the contrary, the undisputed testimony of Mrs. Buehlman, which was the sole testimony offered respecting the service directed at the partnership, established that when, in the normal course of business, a process server requested that a partner be made available to accept service, Mrs. Buehlman would, "see what partner was available and call him to come to the administration office." It would have been an easy matter for the process server to serve a partner in accordance with CPLR 310. That he did not do so is appar-

ently due to his failure to ask that one be made available rather than to any affirmative attempt by the partnership to evade service.

Although conceding that the rationale of *Fashion Page* (50 NY2d 265) is not here applicable, the dissent would uphold the service intended for East Nassau upon the singular ground that Mrs. Buehlman was in fact authorized by the partnership to accept service in its behalf. It is, at best, questionable whether Mrs. Buehlman was so authorized. Certainly, she possessed no express authority, and contrary to the impression which might be gathered from the dissent, the record provides no indication of the frequency with which she ended up the recipient of process intended for the partnership. Nor is there indication that when she did assume to accept process she did so with the knowledge or approval of the East Nassau partners.

Be this as it may, let us assume for argument's sake that Mrs. Buehlman was authorized by the partnership to accept process. The question is what relevance this supposed fact should have to our assessment of the validity of the service at issue.

Due process requires that service be effectuated in a manner reasonably calculated to afford notice of a proceeding to interested parties. *(Mullane v Central Hanover Trust Co.,* 339 US 306.) Ordinarily, however, it is not necessary to address directly whether service has been accomplished in such a way as would satisfy constitutional standards. This is because there are statutes specifically regulating the manner of service and if they have been complied with, the presumption must be that the service meets the requirements of due process. In exceptional circumstances service will be sustained even though it does not comport with the applicable statute *(see, e.g., Fashion Page v Zurich Ins. Co., supra,* at 274; *McDonald v Ames Supply Co., supra,* at 115), but service can never be sustained when it does not satisfy due process standards. The fundamental consideration underlying every case in which the validity of service is at issue is whether the service was under all the circumstances reasonably calculated to afford the prospective defendant the required notice.

Clearly, the present case is not one in which a court ought to excuse the plaintiff from complying with the applicable statute. As noted, there has been no showing of any affirmative attempt by the partnership to evade service, nor is this a

case where the process server diligently endeavored to fulfill the statutory mandate but, through no fault of his own, served the wrong person. So far as can be told from the record made at the traverse hearing, the process server, although undoubtedly aware of the statute's requirement of personal service, did not even ask that a partner be made available to accept service.

But even if it were possible somehow to excuse the plaintiff and his agent, the process server, from the statutory mandate, the service at issue would still fail for it cannot be said that the service was reasonably calculated to apprise the intended defendant of the action. If Mrs. Buehlman was East Nassau's agent for the receipt of process, there is nothing in the record to show that the process server knew that to be the case. When he deposited the summons with her without, so far as can be told, making any inquiry into her authority, the process server did not know what Mrs. Buehlman would do with the summons. That, as subsequently came to light at the traverse hearing, Mrs. Buehlman did know to send the summons to East Nassau's malpractice carrier, could have had no bearing upon the process server's decision to leave the summons with her.

There may, of course, be cases in which an agency relation between the party to be bound in an action and the person served will be of consequence in determining whether the service was accomplished in a manner reasonably calculated to afford notice. If, for example, the intended defendant has openly waived personal service and has openly agreed to be served through someone other than those designated in the applicable statute, the process server is clearly entitled to rely on such a waiver; service upon one whom the process server knows at the time of service to be the intended defendant's agent for the receipt of process is clearly calculated to give notice. But where, as in the present case, the process server has no certain knowledge of, or even reasonable grounds to infer the existence of an agency relation assuring that the summons will come into the hands of the proper party, it cannot be said that the service made upon someone other than one statutorily authorized to receive it was, in fact, reasonably calculated to give notice.

In the final analysis, the theory upon which the dissent rests is little if at all different from that so often advanced to save defective service, namely, that the error of the process server should be excused and the service sustained because

the process shortly came into the possession of the proper party. The argument has been routinely rejected *(see, McDonald v Ames Supply Co., supra,* at 115, and cases cited therein; *see also, Feinstein v Bergner, supra,* at 241; *Markoff v South Nassau Community Hosp., supra,* at 288), and there is no reason why the present case should be treated as an exception. That there may exist some arrangement unknown to the process server by which process eventually finds its way to the party designated by statute to receive it is, quite simply, irrelevant. The fact that process is eventually received by the statutorily designated party, whether by chance or subsequently discovered arrangement, does not retrospectively excuse the process server's initial failure diligently to attempt compliance with the statute, and, to effect service in a manner reasonably calculated to give notice. Contrary to the suggestion of the dissent, the rules of agency cannot be employed to validate service invalid when made. A principal purpose of the statutes regulating the manner of service is to assure that certain high standards of care are maintained by process servers. It is completely inconsistent with this very sound objective to permit agency rules effectively to displace the statute, and, for us thereby to countenance careless service.

Turning now to the service directed at defendant Cave in his individual capacity, the undisputed testimony at the traverse hearing established that plaintiffs' counsel called Dr. Cave's office on several occasions to find out when he would be available to accept service. When these inquiries were uniformly deflected, plaintiffs' process server made three attempts to serve Cave at his home. On the second such attempt, the process server was told by a middle-aged woman at defendant's residence that Cave would be at home on the afternoon of the following day, which, we note, was a holiday. The process server returned at that time but found no one home. Thereupon, he affixed the summons to the door of defendant's home and subsequently mailed a copy to defendant.

The Referee found that the process server had not shown due diligence in attempting to make personal service upon Cave, and that his resort to service pursuant to CPLR 308 (4) was, therefore, ineffective. We disagree.

Where, as here, reasonable efforts to arrange for personal service on a defendant at his place of work are unavailing and the process server thereafter repeatedly attempts to serve the defendant at his home—on one occasion returning there at a time he had been specifically advised that the defendant

would be in—we think there has been a sufficient showing of due diligence to permit "nail and mail" service pursuant to CPLR 308 (4).

Accordingly, the order of the Supreme Court, New York County (Arthur E. Blyn, J.), entered June 24, 1986 which, *inter alia,* confirmed the report of Special Referee Frank B. Lewis dated November 12, 1985 in its entirety, and in view of the Referee's findings that personal jurisdiction had been obtained over defendant East Nassau Medical Group, but had not been obtained over defendant Alfred E. Cave, denied defendant East Nassau's motion to dismiss the action as to it, but granted defendant Cave's motion to sever and dismiss the action as to him, modified, on the law and the facts, to the extent of rejecting the Referee's above-stated findings, granting defendant East Nassau's motion to dismiss the action against it based on its affirmative defense of lack of personal jurisdiction, denying the motion of defendant Cave to dismiss the action as against Cave for lack of personal jurisdiction, and reinstating the action as to him, and except as so modified, should be affirmed, without costs.

SANDLER, J. (dissenting in part). In sustaining service on East Nassau Medical Group, the I.A.S. court observed that the Referee properly applied the "estoppel theory" set forth in *Fashion Page v Zurich Ins. Co.* (50 NY2d 265). I am in agreement with the court's memorandum opinion, and for the reasons set forth in it, that the reliance on the Court of Appeals opinion was misplaced.

As the memorandum opinion correctly observes, the opinion in *Fashion Page (supra)* addressed the issue in terms on the right of a process server seeking to effect service on a corporation to rely under the circumstances presented on the claim of authority advanced by the person on whom the service was made. The opinion did not address the issue, although it could have been addressed under the facts presented, whether a corporate employee may be found to have been authorized by appointment under CPLR 311 (1) on the basis of practice and routine although the individual was not "expressly" so authorized.

It is important to observe, however, that in this court's opinion in *Fashion Page* (69 AD2d 787), the result of which was affirmed by the Court of Appeals, it was found that the process was served on a person authorized under the law to receive it, and that the same view was taken by one Judge of

the Court of Appeals in a concurring opinion. From a reading of the Court of Appeals opinion in *Fashion Page,* it is apparent that the court neither accepted nor rejected the ground assigned by this court for sustaining service. Accordingly, this court's opinion in *Fashion Page* remains, for our purposes, an authoritative statement of the principle that service upon a corporate employee may be sustained on the basis of implied authority. Therefore, if it were to be accepted that the hearing minutes established implied authority to accept service, the single issue of law presented, undeniably a troublesome one, would be whether the rule adopted by this court in *Fashion Page* applies to service on a partnership employee in light of the absence in CPLR 310 governing service on a partnership of language with regard to service on an agent authorized to receive such service that appears in CPLR 311 (1), regulating service on corporations.

Preliminarily, and on any fair reading of the hearing minutes, it seems quite clear that Mrs. Buehlman, the person here served, was in fact authorized as a matter of ongoing routine and practice to receive service, and was in fact the person whom the partnership wished to receive service. The record discloses no support for the memorandum opinion's suggestion that there was something questionable about her de facto authority to receive service.

Her testimony was clear and explicit. She testified that she was executive secretary of the defendant, and had been executive secretary for five years. When asked whether she was authorized to accept service of legal papers upon the medical group, she responded:

"Well, there is nothing written that says it. It is just that everybody gives all papers to me.

"Q. So legal papers have come to you in the past? A. Yes.

"Q. You have accepted them? A. Yes."

She further testified that a person seeking to serve legal papers would normally encounter another secretary, who would either call her out or send the server into her office. She testified she would "generally" accept legal papers if she were present, and that on accepting such papers she would, as she did in this case, "make note of them and send them to our insurance carrier".

She further testified: "I just make a note of the time and date, and I just send that in a letter to the insurance carrier."

She stated that she would maintain a copy of the letter that she sent to the insurance carrier.

In addition, in responding on cross-examination to the question as to whether anyone ever designated her as an agent to receive service of summonses and complaints on behalf of the partnership, Mrs. Buehlman responded: "Nothing has really been designated. It is just part of my job to receive all papers."

The import of this testimony is buttressed by Mrs. Buehlman's testimony, carefully elicited by defense counsel on cross-examination, that if a process server requested that a partner be made available to accept service, she would in fact make such arrangements. This testimony confirms that in the absence of such a specific request it was her practice to accept process herself. Significantly, the defendant made no effort to introduce testimony that the partners in this medical group were not aware of the practice that had been followed, or that they would have disapproved the practice if aware of it. On any commonsense evaluation of the testimony, it is plain that the partners were aware of, and approved, a practice that had been followed for some years, the primary purpose of which was obviously to serve their convenience.

It is also clear that the insurance company servicing the defendant was aware from that which was included by Mrs. Buehlman in her letters to them that process was being accepted by someone who was not a partner. It is a fair inference from Mrs. Buehlman's testimony that the insurance company at no time informed her that she had no right to accept process. Indeed, it is a reasonable inference from the testimony that no issue had previously been raised by the insurance company with regard to the acceptance of process, and that in this case the issue was raised only because the success of the motion would preclude the action on Statute of Limitations grounds.

I am perplexed by that part of the memorandum opinion that comes to the factual conclusion that the Deputy Sheriff made no inquiry as to Mrs. Buehlman's authority, and the legal conclusions drawn from that factual conclusion. The Deputy Sheriff was not called to testify, apparently because plaintiffs' counsel believed that Mrs. Buehlman's testimony adequately established her authority to accept process. She herself had no individual recollection of the event except to the extent to which it was embodied in her letter to the

insurance company—an absence of recollection which confirms that her acceptance of process in this case was not an isolated incident. It is surely doubtful on the basis of experience that the Deputy Sheriff, having been referred to Mrs. Buehlman by the receptionist, simply shoved his papers at her and made no effort to confirm her authority to accept process.

Even if it were to be supposed, contrary to normal experience, that the Deputy Sheriff made no inquiry as to Mrs. Buehlman's authority to receive process, I disagree with the conclusion that the service of papers here would not have been reasonably calculated to give notice to the defendant. The record is clear that as a matter of practice the receptionist would have referred someone seeking to serve process to Mrs. Buehlman. It is unrealistic to suppose that process so served was not reasonably calculated to inform the defendant of the action. Moreover, if it were accepted that Mrs. Buehlman was in fact authorized to receive process, it is difficult to see any relevance to a failure, if there was such a failure, to make an appropriate inquiry as to her authority.

From the foregoing summary of the evidence it is clear that Mrs. Buehlman had been effectively authorized by the partnership to accept process, had done so on a regular basis with the knowledge and approval of the partners, and also with the knowledge of the insurance company, and that no previous challenge to the legal effectiveness of such service had ever been made. The finding that she had been effectively authorized to accept process is, of course, not automatically dispositive of the issue presented. As previously indicated, this court's opinion in *Fashion Page (supra)*, although sustaining the validity of service on a corporate employee on the basis of implied authority, did not address the issue of implied authority to accept service of a partnership employee.

Analysis of the issue appropriately starts with what I think may fairly be regarded as the general rule that a principal is bound by actions of an agent which the principal has authorized. The question presented is whether the phrasing of CPLR 310, providing that service on partners is service on the partnership, and making no reference to persons authorized by the partnership to accept service, overrides the general agency principle. Nothing in the language of the section explicitly negates the application of the usual rule, and I am aware of no persuasive reason why the usual agency rule is here inapplicable.

It is true, as reflected in decisions cited in the court's memorandum opinion, that the dominant tendency has been to require strict compliance with statutory requirements for the service of process. But no case has been called to my attention which has ever held that someone defined in a relevant statute as a person upon whom service is to be made may not authorize another to do so. At least in the context of service on a business entity at its place of business, there would seem little reason why the normal rules of agency should not apply.

The critical issue, in my view, arises from the absence in CPLR 310, relating to service on a partnership, of language equivalent to that found in CPLR 311 (1), authorizing service on persons authorized by appointment to receive service, and the possible inference that the absence of such language was purposeful and designed to exclude the validity of service upon an employee authorized to receive it.

Analysis of CPLR 311 (1) strongly suggests that such an inference is unwarranted. In CPLR 311 (1), the Legislature undertook to set forth those officers and employees of a corporation as to whom service would be effective, wholly without regard to their actual authority within the corporation, and then in what seems to have been an effort to avoid the incorrect inference that service on anyone else would be invalid, went on to include "any other agent authorized by appointment or by law". Accordingly, I do not believe that the absence of equivalent language in CPLR 310 is correctly interpreted as intended to override the usual agency principles, and to negate the authority of the partnership to authorize a trusted employee to accept service on its behalf.

In short, we are confronted here with a situation in which the Deputy Sheriff served the executive secretary of a partnership, apparently its principal administrative employee, who had accepted such service as a matter of routine practice for some years, with the obvious knowledge and approval of the defendants, and without any objection by the defendants' insurer, which was regularly informed of this practice. It would be manifestly unjust if this action were to be precluded on Statute of Limitations grounds, and without regard to its possible merits, because of a belated challenge to the validity of such service brought by a partnership that was surely aware of the practice (as was their insurer) and had approved it.

Undeniably there are circumstances in which considerations of consistency, predictability and the like mandate what is an unjust result in an individual case and in a predictable group of cases. I see very little realistic basis for fear that sustaining service under the circumstances here presented, undeniably the just result in this and similar cases, would produce such undesirable consequences in comparable situations as to warrant construction of the governing section, although its language does not so require, as overriding traditional agency principles.

As already noted, the approach recommended here is consistent with that already adopted by this court with regard to service on corporations. At most, the suggested rule would simply make valid service on a partnership under circumstances which this court sustained as appropriate for service on corporations in our opinion in *Fashion Page* (69 AD2d 787, *supra*). Moreover, there seems very little reason to fear that prudent process servers, as a result of sustaining service here, will not in the usual situation continue to insist upon serving a partner where the action is against a partnership. It is surely a reasonable inference that the Deputy Sheriff in this case, as did those who had previously served process on the executive secretary of the defendant, did so because of a commonsense judgment that it was unnecessary to interrrupt doctors engaged in the treatment and examination of patients to require one of them to accept process.

The very most that I could see as a consequence of sustaining process under the circumstances presented is that it will result in additional hearings to determine whether partnership employees who accepted service were authorized to do so. Experience suggests that such hearings will occur only where the timing of the service presents the defendant with the opportunity, by vacating service, to defeat the action on Statute of Limitations grounds. I see no reason to believe that such additional hearings would unduly burden the courts, or would present issues that the courts are not capable of resolving appropriately.

Accordingly, the order of the Supreme Court, New York County (Arthur E. Blyn, J.), entered June 24, 1986, should be modified, on the law and the facts, without costs, to the extent of denying the motion of the defendant Cave to dismiss the action as against him for lack of personal jurisdiction, and should be otherwise affirmed.

KUPFERMAN, SULLIVAN and KASSAL, JJ., concur with MURPHY, P. J.; SANDLER, J., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on June 24, 1986, modified, on the law and the facts, to the extent of rejecting the Referee's findings, granting defendant East Nassau's motion to dismiss the action against it based on its affirmative defense of lack of personal jurisdiction, denying the motion of defendant Cave to dismiss the action as against Cave for lack of personal jurisdiction, and reinstating the action as to him, and except as so modified, affirmed, without costs and without disbursements.