**Anthony SARTOR, Plaintiff,**

v.

**UTICA TAXI CENTER, INC., Pierre Toussaint and Julien Mesamours, Defendants.**

No. 01 Civ. 0407(VM).

United States District Court,
S.D. New York.

April 29, 2003.

Glenn A. Herman, Herman & Herman, P.C., New York City, for Plaintiff.

Michael Josephs, Norman Volk & Associates, P.C., New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Anthony Sartor ("Sartor") brought this action under the Court's diversity jurisdiction against defendants Utica Taxi Center, Inc. ("Utica"), Pierre Toussaint ("Toussaint") and Julien Mesamours ("Mesamours") (collectively, "Defendants"), asserting claims for personal injuries Sartor sustained during a collision in Manhattan between his truck and a taxi driven by Mesamours. The taxi was registered in the name of Toussaint and leased or garaged by Utica. None of the defendants answered the complaint within the statutorily allotted time frame.

Following the Court's entry of a default judgment awarding $100,000 to Sartor after an inquest on damages, Mesamours and Toussaint appeared by counsel for their insurer, American Transit Insurance Company ("ATIC"), and moved to vacate the judgment. Defendants alleged, in separate affidavits addressed to the Court, that neither of them had received service of process in this action. (*See* Affidavit of Julien Mesamours dated April 30, 2001 ("Mesamours Aff.") and Affidavit of Pierre Toussaint dated May 2, 2001 ("Toussaint Aff."), attached to Joint Appendix, Record on Appeal in *Sartor v. Toussaint,* No. 01–9194 (2d Cir.2001) ("JA"), at A–52–53, A–57–58).[1] In response, the Court conducted an evidentiary hearing on August 15, 2001 (the "Hearing") to consider Defendants' motion. Mesamours and Sartor's process server, Brenton Palmer ("Palmer"), testified at the Hearing.[2] Based on the record at the Hearing, and the related documents the parties submitted in that regard, the Court denied Defendants' motion and reaffirmed the default judgment by Order dated September 28, 2001. The grounds for the ruling were stated on the record at the Court's conference with the parties on October 12, 2001. (*See Sartor v. Utica Taxi Ctr., Inc.,* No. 01 Civ. 0407 (S.D.N.Y. October 12, 2001), attached to JA at A–239–245.)

On Defendants' appeal, the Second Circuit vacated the default judgment, and remanded for a determination regarding two issues: (1) whether the process served by Palmer on Mesamours satisfied the standard of due diligence prescribed by New York Civil Practice Law and Rules ("CPLR") 308(4) and thus complied with New York law; and (2) whether Palmer's service on Toussaint complied with CPLR 308(2). *See Sartor v. Utica Taxi Ctr., Inc.,*

---

1. Utica has made no appearance in the case. Thus, the default judgment remains in effect as to Utica.

2. Although Toussaint had asserted in his affidavit that he had not received service, he did not appear at the Hearing despite notice provided to him by counsel. At the hearing, Toussaint's counsel stated that he did not know why Toussaint was not present and offered no explanation for Toussaint's failure to appear. Counsel did not request a pause in the proceeding to enable him to inquire as to Toussaint's whereabouts, nor did he seek an adjournment to ensure Toussaint's personal appearance. Toussaint later claimed that an agent of ATIC had given him the wrong date for the Hearing.

2002 U.S.App. LEXIS 18619, at *9 (2d Cir. Sept. 6; 2002). This Court invited the parties to submit responsive briefs. Having reviewed and considered the questions posed by the Circuit Court in light of the prior record, the submissions on remand and the applicable law, for the reasons discussed below the Court's judgment is reaffirmed and reinstated.

## I. DISCUSSION

### A. MESAMOURS

Palmer testified at the Court's Hearing that, as he had attested in his affidavit of service (*see* Affidavit of Service of Brenton Palmer dated February 21, 2001) ("Palmer Aff. I"), attached to (JA at A–51), he attempted on three separate occasions to serve the summons and complaint on Mesamours at his home address in Brooklyn— on Friday, January 19, 2001 at 8:45 p.m.; on Wednesday, January 24, 2001 at 7:00 a.m. and on Tuesday, February 20, 2001 at 6:40 p.m. He described Mesamours's residence as located on the first floor of a three-story building at 1235 East 35th Street, Brooklyn, New York. The premises contained a front door leading to a small vestibule in which there were mailboxes, as well buzzers used to allow entrance past a locked glass door that barred access to an inner hallway leading to the apartments. According to Palmer, during each visit he rang Mesamours's bell in the lobby and received no answer. On his third attempt, while in the outer lobby, he encountered a neighbor, identified as Mr. Francis, who confirmed that Mesamours lived at that address but would not divulge Mesamours's place of business. (*See* Palmer Aff. I, JA at A–51.) Having obtained no response to his pressing of Mesamours's buzzer, Palmer affixed the summons and complaint to the door of the premises and sent a copy of the papers to him at that address by first class regular mail on February 21, 2001.

On the basis of the documentary evidence the parties presented, the quality of the testimony given by the witnesses at the hearing, and its observation of their demeanor, the Court credited Palmer's account and concluded that Palmer had served the summons and complaint as he had attested and reaffirmed at the Hearing, and that Mesamours had received the papers. Palmer's description of the premises matched that of Mesamours in all material respects. The Court noted in Mesamours's version of the events certain inconsistencies and apparent hedging that rendered some aspects of his testimony less than candid. For example, he denied having received either the summons and complaint Palmer asserted he left at Mesamours' residence or the copy mailed to him. He also testified that he first became aware of this lawsuit when informed about it at ATIC's offices, which apparently sent the default judgment to him by mail, prompting Palmer to take the document to ATIC. But he also stated that he received documents related to this case through the mail: "About twice. Two different things." (Transcript of the Evidentiary Hearing on August 15, 2001 ("Tr."), attached to JA, at A–142, A–181–183.) He testified that he did not remember precisely when he received these documents but that it was sometime in 2001 about two or three weeks apart. (*See id.* at A–182–183.) He acknowledged having opened the envelopes and described the content of one of them as a legal document that he understood to say on it that "I was sued by like the driver, the truck driver. It got something that suit against Mesamours. Sartor against Mesamours." (*Id.* at 183.) It is reasonable to infer that the papers to which Mesamours referred in this statement and which he admitted having received in the mail at home on one of the two occasions he mentioned, are the summons and complaint in this action, lending

some credence to Palmer's testimony that he mailed those documents to Mesamours's residence on February 21, 2001.

Moreover, while Mesamours asserted in his affidavit on each of the three occasions that Palmer alleged he attempted service both Mesamours and his wife were at home, at the hearing he testified that he was at home only on two of those instances because he regularly leaves for work at 4:00 a.m., and that his wife, who was employed in Long Island, worked a shift that commenced at 3:00 p.m., so that on weekdays she ordinarily would not be home in the evenings. (*See id.* at A–136–137; Mesamours Aff., JA at A–30.)

Palmer also testified about speaking to a person in the inner lobby on his third attempt to serve Mesamours, presumably the neighbor he identified in his Affidavit of Service as "Mr. Francis." This testimony has some bearing here both for the details it supplies that enhance the quality of Palmer's evidence, lending credibility to his version of the facts, and for its connection the precise issue now before the Court: the extent of due diligence Palmer exercised prior to resorting to service of process by the "affix and mail" procedure permitted under CPLR 308(4).

Mesamours argues that Palmer's purported "affix and mail" service here failed to satisfy the requirements of CPLR 308(4) and thus was insufficient as a matter of law because Palmer's efforts fell short of the requisite level of due diligence. Specifically, according to Mesamours, there is no indication that anyone physically denied Palmer access to the inner doorway of the premises, or that Palmer sought to gain such entrance, requiring him to affix the service papers to the inner lobby door rather than to Mesamours's apartment door. Moreover, Mesamours

contends that if service at defendant's residence is unsuccessful, the "affix and mail" procedure allowed under CPLR 308(4) is not available unless personal service has also been attempted at defendant's actual place of business. Mesamours points out that Sartor was aware of Palmer's place of business at Utica because he made reference to it in the complaint but that Palmer made no effort to serve Mesamours there.

In support of this proposition, Mesamours cites several Appellate Division cases from the Second Department, which hold that three attempts by a process server to effectuate service did not constitute sufficient due diligence to authorize affix and mail service pursuant to CPLR § 308(4) where there was no showing that the server had endeavored to ascertain defendant's place of business or to serve the papers there. *See, e.g., Gurevitch v. Goodman,* 269 A.D.2d 355, 702 N.Y.S.2d 634 (2d Dep't 2000); (declaring that "service pursuant to CPLR 308(4) may only be used in those instances where service under CPLR 308(1) and (2) cannot be made with 'due diligence' "); *Silber v. Stein,* 287 A.D.2d 494, 731 N.Y.S.2d 227 (2d Dep't 2001); *Moran v. Harting,* 212 A.D.2d 517, 622 N.Y.S.2d 121 (2d Dep't 1995); *McNeely v. Harrison,* 208 A.D.2d 909, 617 N.Y.S.2d 879 (2d Dep't 1994); *Pizzolo v. Monaco,* 186 A.D.2d 727, 588 N.Y.S.2d 910 (2d Dep't 1992); *Steltzer v. Eason,* 131 A.D.2d 833, 517 N.Y.S.2d 193 (2d Dep't 1987); *see also Reed Hldgs. Inc. v. O.P.C. Corp.,* 122 F.R.D. 441, 443 (S.D.N.Y.1988); *Barnes v. City of New York,* 70 A.D.2d 580, 416 N.Y.S.2d 52, 53 (2d Dep't 1979), *aff'd,* 51 N.Y.2d 906, 434 N.Y.S.2d 991, 415 N.E.2d 979, 980 (1980).

Mesamours's sole reliance on Second Department authority, with only one exception,[3] to support his contention is not

**3.** Mesamours also cites a federal case from this district, *Reed,* 122 F.R.D. 441, in support

of the proposition that due diligence requires service at a defendant's place of business.

surprising or coincidental, nor does it necessarily reflect absence of other precedents. Rather, it reveals, as the Second Circuit observed in reviewing this case, that New York case law "is not ... wholly consistent on this point." *Sartor*, 2002 U.S.App. LEXIS 18619, at *2 (citing cases illustrating this inconsistency).

The New York Court of Appeals addressed this point, albeit cryptically, in *Barnes*, 434 N.Y.S.2d 991, 415 N.E.2d at 980, the case on which the Second Department doctrine described above is grounded. Though affirming the Appellate Division, the Court of Appeals effectively qualified the ruling, using the occasion to "note in passing" that it did not "construe the determination of the Appellate Division as having laid down any hard rule of law." *Id.* More significantly, the court added that: "[i]n determining the question of whether due diligence has been exercised, no rigid rule could properly be prescribed." *Id.*

Taking its cue from the Court of Appeals's statement in *Barnes*, the First Department has adopted a more pragmatic approach. In *Hochhauser v. Bungeroth*, 179 A.D.2d 431, 578 N.Y.S.2d 170 (1st Dep't 1992), it ruled that three attempts to serve defendant at home at various times when defendant would reasonably be expected to be found were sufficient to establish "due diligence" so as to permit the use of affix and mail service pursuant to CPLR § 308, making no reference to any additional requirement of showing attempted service at defendant's place of business. *See id.* (citing *Barnes*, 51 N.Y.S.2d 906, 434 N.Y.S.2d 991, 415 N.E.2d 979, and *Moss v. Corwin*, 154 A.D.2d 443, 546 N.Y.S.2d 15

(2d Dep't 1989)). In affirming denial defendant's motion to dismiss the complaint for lack of personal jurisdiction, the *Hochhauser* court declared that: "[n]o rigid rule has been prescribed for determining whether 'due diligence' has been exercised in attempting to effect service so as to permit the use of substituted service pursuant to CPLR 308, subd. 4...." *Id.* This doctrine has been followed consistently by the First Department in numerous other cases. *See Dunleavy v. Moya*, 237 A.D.2d 176, 655 N.Y.S.2d 371 (1st Dep't 1997); *Lara v. 1010 E. Tremont Realty Corp.*, 205 A.D.2d 468, 614 N.Y.S.2d 6 (1st Dep't 1994); *see also Union Garage, Inc. v. Wheatle*, 108 Misc.2d 77, 437 N.Y.S.2d 52, 53 (1981). In fact, the First Department has explicitly found exercise of due diligence sufficient to satisfy CPLR 308(4) even where it specifically acknowledged that the process server, following adequate unsuccessful attempts to effectuate personal service at defendant's residence, had made no attempt to serve defendant at his place of business. *See Brunson v. Hill*, 191 A.D.2d 334, 595 N.Y.S.2d 314 (1st Dep't 1993).

The same approach has been adopted and applied by other appellate Departments. *See State of N.Y. Higher Educ. Servs. Corp. v. Upshur*, 252 A.D.2d 333, 686 N.Y.S.2d 233, 235 (3d Dep't 1999) (citing *Hanover New England v. MacDougall*, 202 A.D.2d 724, 608 N.Y.S.2d 561 (3d Dep't 1994)); *Vail v. Catalano*, 166 A.D.2d 901, 560 N.Y.S.2d 561 (4th Dep't 1990).

In fact, even within the Second Department, decisions on this issue are not entirely consistent or reconcilable. Several

---

However, more precisely, in *Reed* the court found a lack of due diligence because the three attempts that were made at the defendant's home were at times when defendant "could very well have been either going to or returning home from work." *Id.* at 443. The *Reed* court notes that this failure was not

cured by additional attempts at the defendant's place of business, but does not indicate that had service at defendant's residence been found to be sufficiently diligent, an attempt at defendant's place of business would have been required. *Id.*

cases, not cited by Mesamours, have applied the contrary doctrine, ironically citing First Department precedents as the first line of authority, without reference to the Second Department rulings that have imposed the additional due diligence standard demanding evidence of an effort to serve defendant at his actual place of business. *See, e.g., Rodriguez v. Khamis*, 201 A.D.2d 715, 608 N.Y.S.2d 486 (2d Dep't 1994) ("We find that the attempted personal service at the defendants' actual home address on three occasions when a working person might reasonably have been expected to be at home was a sufficient showing of due diligence permitting substituted service.") (citing CPLR 308(4); *Brunson*, 595 N.Y.S.2d at 314, and *Hochhauser*, 578 N.Y.S.2d at 170); *see also Johnson v. Waters*, 291 A.D.2d 481, 738 N.Y.S.2d 369, 370 (2d Dep't 2002) (citing *Matos v. Knibbs*, 186 A.D.2d 725, 588 N.Y.S.2d 911, 912 (2d Dep't 1992)); *Velez v. Springer*, 92 A.D.2d 610, 460 N.Y.S.2d 61 (2d Dep't 1983).

It is not this Court's place or mandate to resolve the apparent conflict manifested above in the state court reading and application of New York law. However, some observations suggesting how the inconsistency may be harmonized may be in order. First, against the New York Court of Appeals's charge that "no rigid rule could be prescribed" in determining when the due diligence standard has been fulfilled, it is difficult to reconcile a rule that rigidly superimposes as the measure of complying process under CPLR 308(4) a requirement that before the server may resort to the "affix and mail" method he must first endeavor to effect service pursuant to both CPLR 308(1) and 308(2) by demonstrating unsuccessful efforts to reach defendant personally not only at his residence, but at his workplace as well.

Second, nothing on the face of the statute compels such a result. CPLR 308(2) is formulated in the alternative by a conjunctive "or" that on its face permits the delivery of the summons at any of three distinct places: defendant's actual place of business, dwelling place *or* usual place of abode. CPLR 308(4) effectively incorporates the deliver-and-mail method of CPLR 308(2), merely adding the due diligence prerequisite and the "affix and mail" procedure. A reading of the due diligence test of subdivision (4) that would demand a showing of effort to serve defendant at both his residence *and* his place of business would be tantamount to altering the word "or" in CPLR 308(2) and replacing it with "and".

Third, a close reading of the facts involved in a number of the cases in which the courts have demanded the extra step of some attempt to serve defendant at both his place of business and at his residence in order to satisfy the due diligence rule of CPLR 308(4), entail instances in which the process server's attempts to serve at defendant's residence did not demonstrate a requisite level of effort because the three occasions on which attempted service was alleged did not reflect days and times sufficiently varied to insure that defendant would reasonably be expected to be at home. In fact, that situation appeared to have been the case in *Barnes*. *See* 416 N.Y.S.2d at 53 (process server attempted service on a Wednesday at 10:00 a.m., Thursday at 5:10 p.m., and Friday at 1:00 p.m. during one week, and Tuesday at 8:20 a.m. the following week); *Scott*, 611 N.Y.S.2d at 265 (finding due diligence insufficient where attempts at service were made in the afternoon on two weekdays and a third on the Saturday of Labor Day weekend); *Moran*, 622 N.Y.S.2d at 122 (due diligence not found where process server made two attempts on the Saturday of Labor Day weekend and one during working hours the day after Labor Day). Under these circumstances, the putative

service at defendant's residence manifested clear signs of lack of reasonable effort or calculated bad faith, justifying imposition of a more rigorous due diligence test. *Cf., Matos,* 588 N.Y.S.2d at 912 (one attempt of service at home on a week day during working hours, one on a Friday evening and another on a Saturday afternoon found sufficient); *Rodriguez,* 608 N.Y.S.2d at 486 (three attempts at personal service when a working person might reasonably have been expected to be at home was sufficient to show due diligence).

Third, among the basic purposes the due diligence test seeks to serve is to insure fair notice to persons being sued and to protect litigants, both plaintiffs and defendants, from the perjury and other unscrupulous abuses committed by some process servers who attest to having tried to find defendant but in fact made no such effort. *See Raschel v. Rish,* 69 N.Y.2d 694, 512 N.Y.S.2d 22, 504 N.E.2d 389, 390 (1986); *Feinstein v. Bergner,* 48 N.Y.2d 234, 422 N.Y.S.2d 356, 397 N.E.2d 1161, 1163 (1979). But if the circumstances described by the process server in his affidavit manifest fair and reliability that presumptively suggest credible, good faith efforts to serve defendant at home after a minimum number of reasonable attempts—for example, an accurate description of the premises or the unchallenged identification of a neighbor or building staff or other person, of whom the server made inquiries and whose corroboration may be obtained if necessary—what added value would be gained by demanding that the process server repeat the effort at defendant's place of business? In adding such a hurdle, questions would arise concerning the sufficiency of the due diligence that must then be demonstrated in the attempts to serve at a defendant's workplace. How many additional tries would it be necessary to demonstrate service at defendant's workplace before it would be acceptable for the process server to affix and mail there, or

to return to defendant's residence and, if once again unsuccessful in achieving personal service, only then falling back to the "affix and mail" procedure?

In fact, this Court reads the weight of authority regarding the split in New York case law, possibly reflecting the practical and conceptual issues raised above, to lean substantially toward adherence to the Court of Appeals's instruction that CPLR 308(4) prescribes no rigid standard in determining the circumstances under which due diligence has been exercised in connection with effectuating valid "affix and mail" service. *See Barnes,* 434 N.Y.S.2d 991, 415 N.E.2d at 980. Instead, the predominant view appears to follow a course that examines the totality of all the circumstances that bear on whether the service of process at issue was reasonably calculated to give the defendant notice, with the CPLR 308(4) due diligence inquiry guided by several pertinent considerations: whether the process server (1) attempted service during various days and times—before and after working hours, weekdays and weekends or holidays—when defendant may be reasonably expected to be found at home, *see, e.g., Reed,* 122 F.R.D. at 443; *Scott,* 611 N.Y.S.2d at 265; *Barnes,* 416 N.Y.S.2d at 53; *cf. Hanover,* 608 N.Y.S.2d at 562; (2) had an opportunity to serve a person of suitable age and discretion pursuant to CPLR 308(2) and failed to do so, *see, e.g., Miske v. Maher,* 156 A.D.2d 986, 549 N.Y.S.2d 279 (4th Dep't 1989); *Matter of Galuski v. Tutunjian,* 133 A.D.2d 480, 519 N.Y.S.2d 155 (3d Dep't 1987); *MacGregor v. Piontkowski,* 133 A.D.2d 263, 518 N.Y.S.2d 820 (2d Dep't 1987); (3) made adequate inquiry, upon receiving no response to reasonable efforts to gain access to defendant's residence, as to defendant's whereabouts, habits or schedule of times at home, or place of business, *see e.g., Cooney v. East Nassau Med. Group,* 136 A.D.2d 392, 528 N.Y.S.2d

364, 367 (1st Dep't 1988); (4) made an effort to serve at defendant's workplace where the location of employment was readily apparent, *see, e.g., Pizzolo*, 588 N.Y.S.2d at 910.

The message these rulings clearly convey, as the Second Department itself recognized, is that " 'the due diligence requirement refers to the quality of the efforts made to effect personal service, and certainly not to their quantity or frequency.' " *Barnes*, 416 N.Y.S.2d at 54 (citation omitted); *see also Cooney*, 528 N.Y.S.2d at 368.

■ Here, Palmer testified that he attempted service at Mesamour's residence on three different occasions—a Friday evening at 8:45, a Wednesday morning five days later at 7:00 a.m., and four weeks thereafter on a Tuesday at 6:40 p.m. The temporal diversity of these efforts is sufficiently varied so as to appear fairly related to days and times when Mesamours could reasonably have been expected to be home. Palmer stated that in each instance he rang Mesamours's buzzer and obtained no response. Thus, his access to Mesamours's apartment door was physically barred. Although Mesamours argues that Palmer affixed the summons and complaint to the inner lobby entrance rather than to the door of his dwelling, under these circumstances it would be unreasonable to demand more. In fact, there is authority indicating that on these facts such a method would be permissible. *See* David D. Siegel, *New York Practice* 111 (3d ed.1999). Moreover, Palmer also testified that on his third try he made inquiries of a neighbor concerning Mesamours's place of business and was not given such information.

Considering these circumstances in light of the applicable case law factors discussed above, the Court concludes that Palmer's service of process on Mesamours reflected sufficient due diligence to satisfy the requirements of CPLR 308(4).

## B.  TOUSSAINT

Palmer testified that he served Toussaint by leaving a copy of the summons and complaint on January 25, 2001 at 11:40 a.m. at Utica's garage at 465 Utica Avenue, Brooklyn, with a "Mr. Bobby", identified by Palmer as a general agent or dispatcher and co-worker of Toussaint. According to Palmer, Mr. Bobby informed him that he would accept process on Toussaint's behalf. (*See* Tr., JA at A–198.) On January 26, 2001, he mailed a copy of the papers to Toussaint at that address. (*Id.* at A–199.) Palmer also stated, after describing the premises of the taxi company at its Utica Avenue location, that he was familiar with the building because he had previously served process there, on most occasions handing the papers to a dispatcher who ordinarily accepted them on behalf of the defendants. (*Id.* at A–209–210.)

■ Toussaint contends that service on him at 465 Utica Avenue was not proper under CPLR 308(2) because that building was not his actual place of business for the purposes of the statute, but only the garage from which his taxi was leased and operated, and that no person at that address was authorized to receive legal process on his behalf. (Toussaint Aff., JA at A–57.) Toussaint did not appear at the Court's Hearing. Nonetheless, as the party challenging the validity of service of process on a motion to vacate a default judgment, he bore the burden of proof to establish that the purported service did not comply with the statute. *See Velez v. Vassallo*, 203 F.Supp.2d 312, 324 (S.D.N.Y. 2002). Not only did Toussaint fail to appear at the Hearing, he produced no other witnesses to refute Palmer's testimony as to any of the relevant material facts. But

even crediting the statements in Toussaint's affidavit and the arguments he advances in the remand proceeding, the Court concludes that service on him at 465 Utica Avenue satisfied the requirements of CPLR 308(2).

First, in his affidavit, Toussaint acknowledges that he has valid New York State driver's and hack licenses and that his automobile, the taxi involved in the accident that gave rise to this litigation, is "leased and operated" out of a garage at 465 Utica Avenue, Brooklyn. (*Toussaint Aff.*, JA at A–57.) He used that address to register the taxi with the New York State Department of Motor vehicles, as indicated by Mesamours's Report of Motor Vehicle Accident. (*See* JA at A–97.) The accident here at issue involved operation of his vehicle and Toussaint does not deny in his affidavit that the use of the taxi was in the ordinary course of his livery business. In the Police Accident Report form Mesamours filled out at the time of the collision, presumptively as Toussaint's authorized agent, he listed Toussaint as the owner of the vehicle and 465 Utica Avenue as Toussaint's address. *See* New York Vehicle and Traffic Law ("VTL") § 388 (imputing the liability of the driver to the owner of the vehicle involved in accidents causing injuries). This representation was integrally related to the business purpose for which the taxi presumably had been operated by Mesamours.

Moreover, when ATIC brought an action in New York State Supreme Court, New York County, naming Sartor, Utica, Toussaint and Mesamours as defendants, in order to disclaim insurance coverage for the accident underlying this action, it listed Toussaint's address on the summons as 465 Utica Avenue, Brooklyn, and apparently served him there. (*See* Summons and Complaint, *American Transit Ins. Co. v. Sartor*, Index No. 10899–01 (N.Y.Sup.Ct. Apr. 18, 2001.), attached to JA at A–91–92,

A–93–96.) ATIC mailed to Toussaint at 465 Utica Avenue, Certified Mail, Return Receipt Requested, its letter disclaiming insurance coverage for the accident, further evidencing that Toussaint used that address for the purpose of insurance relating to his business vehicle. (*See* Letter to Pierre Toussaint and Julien Mesamours, dated April 13, 2001, attached to JA at A–39–40.) In the face of this evidence, Toussaint's argument that 465 Utica Avenue, Brooklyn was not his actual place of business for the purposes of his taxi operations and service of process in this action, rings somewhat hollow and incongruous, if not disingenuous, particularly when advanced on his behalf by counsel for ATIC, which deemed that address perfectly proper to notify Toussaint of its disclaimer of insurance coverage and to serve him with process when it sued him in a proceeding related to this very action.

■ Whatever the nature of any other employment or work location Toussaint may claim to be his actual place of business, it is settled that a defendant can have more than one "actual place of business" for the purpose of service of process under CPLR 308. *See Velez*, 203 F.Supp.2d at 325 (citing *Gibson, Dunn & Crutcher LLP v. Global Nuclear Servs. & Supply, Ltd.*, 280 A.D.2d 360, 721 N.Y.S.2d 315, 317 (1st Dep't 2001) and *Columbus Realty Inv. Corp. v. Weng–Heng Tsiang*, 226 A.D.2d 259, 641 N.Y.S.2d 265, 266 (1st Dep't 1996)). *See also* CPLR 306(6) and CPLR 308 practice commentary C 308:7 (McKinney 2003). The record contains substantial evidence establishing that Toussaint held out 465 Utica Avenue as his actual place of business for the purpose of correspondence and other activities related to his taxi operations. Having induced reliance on those representations, he is estopped from denying the propriety of that address for the purpose of service of pro-

cess. *See Velez,* 203 F.Supp.2d at 325–26; *Gibson, Dunn,* 721 N.Y.S.2d at 317.

Further, while Toussaint denies that 465 Utica Avenue was his place of business at the relevant time, and asserted that the address of his actual residence was readily ascertainable, he does explain why he used 465 Utica Avenue as the address on the motor vehicle registration for his taxi, or why if his vehicle registration address later changed, he did not notify the Department of Motor Vehicles in accordance with VTL § 505(5). Under these circumstances, Toussaint is estopped from challenging the propriety of service made at the address of his vehicle's registration. *See Traore v. Nelson,* 277 A.D.2d 443, 716 N.Y.S.2d 701, 702 (2d Dep't 2000) (citing *Sherrill v. Pettiford,* 172 A.D.2d 512, 567 N.Y.S.2d 859 (2d Dep't 1991)); *Cohen v. Arista Truck Rent. Corp.,* 70 Misc.2d 729, 335 N.Y.S.2d 30, 31–32 (1972).

Finally, the Court notes and credits Palmer's testimony that he had served process at Utica's address on numerous previous occasions and that the dispatchers there, who would qualify as persons of suitable age and discretion similar to doormen and security officers, represented that they regularly accepted legal papers on behalf of the named defendants. *See F.I. duPont, Glore Forgan & Co. v. Chen,* 41 N.Y.2d 794, 396 N.Y.S.2d 343, 364 N.E.2d 1115, 1117 (1977); *Board of Managers of Le Trianon Condo. v. 1439 Realty Corp.,* 186 A.D.2d 437, 588 N.Y.S.2d 565, 566 (1st Dep't.1992) (citing *Costine v. St. Vincent's Hospital & Med. Ctr.,* 173 A.D.2d 422, 570 N.Y.S.2d 50 (1st Dep't 1991)). Palmer testified that he handed the process papers addressed to Toussaint to Mr. Bobby, who identified himself as a "co-worker of defendant," and whose physical description was stated in the affidavit of service. (*See* Palmer Aff. II, JA at 56.) While Toussaint denies that anyone at 465 Utica Avenue was authorized to accept process on his behalf, and though he had the burden of proof with respect to the issue, he did not produce Mr. Bobby or any other witness or evidence to refute Palmer's testimony that he served Toussaint's papers on a person of suitable age and discretion who represented that he could accept process on Toussaint's behalf.

Under these circumstance, the Court concludes that there is sufficient evidence on the record before it to establish that Toussaint regularly transacted sufficient business at 465 Utica Avenue, Brooklyn, related to his ownership and/or lease of the taxi at issue here so as to qualify that address as Toussaint's actual place of business for the purposes of service of process pursuant to CPLR 308(2), and that Toussaint was properly served at that address in connection with the instant case.

## II. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the default judgments rendered against defendants Julien Mesamours and Pierre Toussaint herein are reinstated.

The Clerk of Court is directed to close this case.

SO ORDERED.