United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 1, 2005**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-50971

_____

STEPHANIE GOETZ,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;
KEVIN MCGILL,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellees,

VERSUS

SYNTHESYS TECHNOLOGIES, INC., ET AL,

Defendants,

ENRIQUE F. GITTES,
ALSO KNOWN AS HARRY GITTES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before GARWOOD, SMITH, and CLEMENT,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this appeal, we confront the *res nova* issue in this circuit regarding the application of New York's method of substituted service known as "nail-and-mail," N.Y. C.P.L.R. § 308(4). The district court, finding that service was proper because the statute was properly applied and service did not violate due process, rejected defendant Enrique Gittes's motion under Federal Rule of Civil Procedure 60(b)(4) to set aside a default judgment. We reverse and remand, concluding that the district court erred in finding that the due diligence requirement of the statute was satisfied where the plaintiff class failed to make even a single attempt at personal service at a known in-state residence.

I.

The plaintiffs, former employees of Synthesys Technologies, Inc. ("STI"), sued to recover unpaid wages and overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, with supplemental claims under Texas law against STI and many of its officers/directors, including Enrique Gittes, the chairman of the board. According to Gittes' uncontested affidavits,[1] he is a United States citizen who resides in Europe. He visits New York occasionally and owns two pieces of property in that state: a house in Southampton[2] and an apartment in Manhattan. Both of the properties are reflected in public records, and his name and address for the Southampton residence appear in that town's telephone directory. Gittes states that when he visits New York State, he usually stays at the Southampton house.

On the other hand, Gittes rarely stays at the apartment and does not conduct business from it, and only occasionally stays there if he is in New York City at night. He asserts that months go by between visits to the apartment, and if he does stay, it is only for one or two nights. He does not hold the apartment out as his residence; it is not listed on his driver's license or any bank account, and he does not use it as a regular mailing address, although he sometimes has mail forwarded there if he knows he will stopping by soon. A cleaning woman has keys to the apartment and comes weekly to water the plants and to tidy the apartment but does not forward mail.

The Southampton address was included as the *only* address in the complaint as a location where the defendant "may be served with process." This was repeated verbatim in each of four amended complaints.

The plaintiffs first attempted to serve Gittes in person at a business address, but it turned out to be vacant. They then made two failed attempts to serve him there at the Manhattan apartment and tried to serve him through certified mail, but that summons was returned as unclaimed. After a motion for substituted service was granted, four more attempts were made to serve Gittes at the Manhattan apartment at different times of the day and different

---

[1] In connection with his rule 60(b)(4) motion, Gittes filed two affidavits. Plaintiffs have not placed anything in the record to dispute assertions that Gittes makes that are relevant to the disposition of this case on appeal.

[2] Southampton is on Long Island, approximately 100 miles from New York City.

days of the week. Finally, a process server affixed a summons and complaint to the front door of the Manhattan apartment address and completed service pursuant to N.Y. C.P.L.R. § 308(4) by mailing another copy to that address, following the technicalities specified by the statute.

Gittes did not timely answer or otherwise defend the lawsuit, and a no-answer default judgment was brought against him. Gittes brought a motion to vacate the default judgment on the basis that the court lacked personal jurisdiction over him based on improper service, under Federal Rule of Civil Procedure 60(b)(4). The district court denied the motion, which is the subject of this appeal.

## II.

An order denying a rule 60(b)(4) motion to set aside a judgment as void for want of personal jurisdiction is reviewed *de novo*. *See Carter v. Fenner,* 136 F.3d 1000, 1005 (5th Cir. 1998). We review the district court's findings of fact underlying its disposition of a rule 60(b)(4) motion for clear error.[3]

## III.

A rule 60(b)(4) motion allows a party to receive relief from a final judgment, order, or proceeding if the underlying judgment is void. Gittes asserts that the default judgment is void and he is entitled to rule 60(b)(4) relief because he was never properly served.[4]

---

[3] *See Cleere Drilling Co. v. Dominion Exploration and Prod., Inc.*, 351 F.3d 642, 645 (5th Cir. 2003) (noting that all district court factual findings are reviewed for clear error).

[4] *Recreational Props., Inc. v. Southwest Mortgage Serv. Corp.,* 804 F.2d 311, 314 (5th Cir. 1986) ("If a court lacks jurisdiction over the
(continued...)

Plaintiffs assert that Gittes was properly served in compliance with Federal Rule of Civil Procedure 4(e)(1), which allows for service "pursuant to the law of the state . . . in which service is effected." They claim that they legally served Gittes in New York under section 308(4) of the New York Civil Practice Law and Rules ("CPLR"). In his rule 60(b)(4) motion, Gittes challenges the propriety of the service as being defective under New York law and invalid because it violates his due process rights under the Fourteenth Amendment.

New York's statute describing proper methods for service of process, N.Y. C.P.L.R § 308, provides, in relevant part:

> Personal service upon a natural person shall be made by any of the following methods:
>
> 1. by delivering the summons within the state to the person to be served; or
>
> 2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . .
>
>     . . .
>
> 4. where service under paragraphs one and two cannot be made with due diligence, by

---

[4](...continued)
parties because of insufficient service of process, the judgment is void and the district court must set it aside.")

affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . .

N.Y. C.P.L.R § 308.

Gittes was served under subsection (4), which is colloquially known as "nail-and-mail service." It is a disfavored method of service in New York; under the plain text of the statute, a plaintiff is required to exercise "due diligence" to complete service either through personal delivery or through a combination of leaving the summons with a competent person at the defendant's residence or place of business, combined with mailing a copy of it to his last known address or actual place of business.[5] The New York Court of Appeals (which is the state's highest court) has construed the statutory requirements for § 308(4) service strictly, having noted that "liberalization of the requirements for service would jeopardize the primary statutory purpose of ensuring that defendants receive actual notice of the pendency of litigation against them."[6]

Gittes first challenges the lawfulness of the "nail-and-mail" service on the ground that the plaintiffs failed to fulfill their statutory duty first to exercise "due diligence" to satisfy service under § 803(1) or (2).[7] The plaintiffs have the burden to show that they satisfied their duty to exercise due diligence.[8] It is well-settled that this requirement is to be "strictly observed, given the reduced likelihood that a summons served pursuant to that action will be received."[9] "The intensive judicial scrutiny of, and the abundance of case law on, substituted service and what constitutes 'due diligence' . . . indicates that a plaintiff who resorts to CPLR 308(4) should be prepared to make a detailed showing of the efforts constituting due diligence, inasmuch as rigid adherence to the requirement of due diligence is expected."[10] Although rigid adherence is required, the caselaw contains very few bright-line rules about when "due diligence" is and is not satisfied, and reviewing courts look to the

---

[5] *See* N.Y. C.P.L.R. § 308(4); *City of New York v. Chem. Bank*, 470 N.Y.S.2d 280, 284 (N.Y. Sup. Ct. 1983) ("'Nail and mail' service requires affixation of the summons to the door of the defendant's place of business, dwelling or place of abode, plus mailing and filing, and proof that personal delivery or 'deliver and mail' substituted service cannot be made by 'due diligence.'")

[6] *Feinstein v. Bergner*, 397 N.E.2d 1161, 1164 (N.Y. 1979).

[7] *Silber v. Stein*, 731 N.Y.S.2d 227, 228 (N.Y. App. Div. 2001) ("It is well settled that 'nail and mail' service pursuant to CPLR 308(4) may be used only where personal service under CPLR 308(1) and (2) cannot be made with 'due diligence.'").

[8] *See State Higher Educ. Servs. Corp. v. Cacia,* 652 N.Y.S.2d 883 (N.Y. App. Div. 1997) (noting that plaintiff has the burden of showing due diligence for the purposes of N.Y.C.P.L.R. § 308(4)).

[9] *Lemberger v. Khan,* 794 N.Y.S.2d 416 (N.Y. App. Div. 2005); *see also Reed Holdings, Inc. v. O.P.C. Corp.,* 122 F.R.D. 441, 443 (S.D.N.Y. 1988) (collecting New York state court decisions).

[10] Jack B. Weinstein, Harold L. Korn & Arthur R. Miller, *CPLR 308(4): Nailing and Mailing Authorized Where Service Under Subd. (1) and (2) Cannot Be Made with Due Diligence*, NEW YORK CIVIL PRACTICE: CPLR P 308.14 (2004).

totality of the circumstances to determine whether the service was "reasonably calculated to give the defendant notice."[11]

The district court found that plaintiffs satisfied their burden to demonstrate that they fulfilled the "due diligence" requirement because before they resorted to "nail-and-mail" service under § 803(4), they made numerous attempts to effect personal service under § 803(1) by stopping by the Manhattan apartment on at least seven different occasions at different times and on different days of the week; made one attempt at Gittes's business address (although that location turned out to be vacant), and one attempt through certified mail (which failed because it was returned as unclaimed). A handful of New York courts have found "due diligence" to be satisfied where service is attempted on repeated occasions at multiple locations.[12]

Gittes does not dispute that plaintiffs attempted to serve him at the Manhattan apartment and at the Park Avenue business address as described above, but he argues that plaintiffs failed to exercise "due diligence" because they only attempted to serve him at the Manhattan apartment, a location where Gittes claims that he only stayed for overnight stays very infrequently, while making *no* attempts to serve him at his more permanent Southampton address, a location he alleges plaintiffs were aware of.[13]

New York courts have repeatedly found that due diligence is absent where the plaintiffs have failed to make any attempts to perform service at known addresses.[14] The record

_____

[11] *Hanover New England v. MacDougall*, 608 N.Y.S.2d 561, 561-62 (N.Y. App. Div. 1994) ("There is no rigid standard by which the due diligence requirement is measured, and whether a party has satisfied that requirement will necessarily depend upon the facts of each case."); *Hochhauser v. Bungeroth*, 578 N.Y.S.2d 170 (N.Y. App. Div. 1992) ("No rigid rule has been prescribed for determining whether 'due diligence' has been exercised in attempting to effect service so as to permit the use of substituted service pursuant to CPLR 308, subd. 4 . . . .").

[12] *See, e.g., Hanover New England*, 608 N.Y.S.2d at 562 (finding that the plaintiff exercised due diligence by attempting to serve defendant at his residence on three different occasions at different times of day and by inquiring neighbor about the defendant's place of employment); *see also Hochhauser*, 578 N.Y.S.2d at 170 (finding that three attempts at service at different times of day was sufficient to establish due diligence); *see* (continued...)

[12](...continued) *also Matos v. Knibbs*, 588 N.Y.S.2d 911 (N.Y. App. Div. 1992) (same).

[13] Plaintiffs aver that this argument is waived by Gittes for failure to raise it below. We refrain from finding the argument waived; although plaintiffs are correct to note that Gittes did not raise this argument in his initial motion to vacate the default judgment, the district court responded to this argument in its order denying relief. Although the issue was admittedly raised in a muddled fashion, the fact that the district court was able to rule on the issue is sufficient for us to consider it raised, even in a refined form on appeal. *In re Liljeberg Enters.,* 304 F.3d 410, 427 n.29 (5th Cir. 2002) ("[A]n argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it.")

[14] *See, e.g, McNeely v. Harrison*, 617 N.Y.S.2d 879 (N.Y. App. Div. 1994) (finding lack of due diligence where plaintiff failed to attempt serving the defendant at known business address); *Schwartzmann v. Musso,* 607 N.Y.S.2d 953 (N.Y. App. Div. 1994) (finding no due diligence where (continued...)

plainly demonstrates that the plaintiffs had actual knowledge of Gittes's Southampton address, which was specifically articulated in the complaint as the proper place to serve him.[15] In addition, plaintiffs had knowledge of the address from the deposition of Michael Fleischhauer, the President and Chief Operating Officer of STI, who indicated that Gittes owned two places in New York, including the Southampton home.[16]

Plaintiffs claim that the cases cited by Gittes, for the proposition that the due diligence requirement is not satisfied where the plaintiff does not attempt service at a known address, are distinguishable because they either involve no attempts to serve a defendant at a known *business* address, or involve no attempts to serve a defendant at *any* known residence. We reject this argument and rather read the cases broadly because of New York's strong commitment to strict observance of the due diligence requirement.[17] Distinguishing the cases cited by Gittes on the narrow grounds argued by plaintiffs would ignore our duty to look to the totality of the circumstances to see whether service was reasonably cal-

---

[14](...continued) plaintiff only attempted to serve defendant at apartment building he owned but did not live at, and no attempts made at residence listed in telephone directory); *Pizzolo v. Monaco*, 588 N.Y.S.2d 910 (N.Y. App. Div. 1992) (finding no due diligence where plaintiff made no attempts to serve defendant at place of his employment, which was "easily ascertainable from the complaint itself"); *Burkhardt v. Cuccuzza*, 438 N.Y.S.2d 594, 596 (N.Y. App. Div. 1981) (finding no due diligence where plaintiff made no attempt to serve defendant at address noted on police accident report).

[15] Curiously, although nothing in the record indicates that service was attempted at the Southampton address, it was later cited as the proper address when plaintiffs sought to collect on their default judgment; the petition for issuance of a turnover order filed in federal district court indicated that Gittes "may be served at his residence at 354 S. Main Street, Southhampton [sic], New York" and an execution against the Southampton house, also filed in federal court, listed the house as Gittes's"address" and "last known address."

[16] The district court found that the plaintiffs did not have to serve Gittes at the Southampton address because they were not aware of the address, given that Fleischhauer was unable to provide a specific address during his deposition. It was clearly erroneous for the district court to make a factual finding that plaintiffs had no knowledge of (continued...)

[16](...continued) the specific address of the house, because the record contains pleadings submitted by the plaintiffs that specifically mention the exact address.

Moreover, assuming *arguendo* that plaintiffs only first learned of the Southampton address at this deposition, it would not have absolved them from the obligation to attempt to perform some investigation into the location of the residence as part of their due diligence inquiry; New York courts have found that a plaintiff failed to satisfy due diligence where it fails to attempt to serve the defendant at an address that could be easily ascertainable with little investigation, such as through the telephone book. *See, e.g., Schwartzmann*, 607 N.Y.S.2d at 953. Such is the case hereSSthe uncontroverted deposition testimony of Gittes indicated that his Southampton address is publicly listed in the telephone directory.

[17] *Lemberger*, 794 N.Y.S.2d at 416 (stating that the due diligence requirement is to be "strictly observed, given the reduced likelihood that a summons served pursuant to that action will be received.")

culated to give notice.[18] As in each of the cases cited by Gittes, the instant plaintiff class failed to take the simple step of making a single attempt at service to a known in-state location before resorting to disfavored nail-and-mail service.[19]

REVERSED and REMANDED.

---

[18] *See Hanover New England,* 608 N.Y.S.2d at 561-62.

[19] *See Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp.2d 670, 677 (S.D.N.Y. 2003) ("[T]he due diligence requirement refers to the quality of the efforts made to effect personal service, and certainly not to their quantity or frequency.") (citing *Barnes v. City of New York*, 416 N.Y.S.2d 52 , 54 (N.Y. App. Div. 1979); *Cooney v. East Nassau Med. Group*, 528 N.Y.S.2d 364, 368 (N.Y. App. Div. 1988)). Because we conclude that service was defective under the New York statute, we do not reach the issue of whether service in this case violated due process.