IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2008

Charles R. Fulbruge III
Clerk

No. 07-20296

JENKENS & GILCHRIST A PROFESSIONAL CORPORATION

Plaintiff - Appellee

v.

GROIA & COMPANY, A Professional Corporation

Defendant - Appellee

v.

INGRID FELDERHOF

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, DAVIS, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Ingrid Felderhof appeals the district court's denial of her motion, filed pursuant to FED. R. CIV. P. 60(b), to vacate the default judgment entered against her. For the following reasons, we affirm in part, vacate in part, and remand.

I

During 1997, John Felderhof and his wife, Ingrid Felderhof, were under investigation by the Canadian government and the United States' Securities and

Exchange Commission regarding the development of gold mining prospects by Bre-X Minerals, Ltd. Mr. Felderhof was a director and senior executive with Bre-X. In response to the investigations, the Felderhofs obtained legal representation from Jenkens and Gilchrist ("Jenkens"). Worried that the Felderhofs' assets may be frozen or seized as a result of the investigations, Jenkens entered into the Modified Legal Representation Agreement (the "Agreement") with the Felderhofs. Aside from payment for hourly fees, the Agreement provided that Jenkens was to be paid a non-refundable $1-million-dollar retainer. This retainer was to be paid in cash or valuable assets. Around the same time that she entered into the Modified Agreement, Ms. Felderhof transferred to Jenkens all of the shares of Travis Close, Inc. The sole asset of Travis Close was a home in Williamsburg, Virginia.[1]

In 2006, after Jenkens completed its work for the Felderhofs, Ms. Felderhof sent a letter to her counsel at Jenkens suggesting that they arrange to transfer the Williamsburg home back to her. Her letter claimed that Jenkens only agreed to hold the home as "caretaker," and that once all fees were paid that the home would be returned to her. Counsel from Jenkens responded, explaining that Jenkens was not merely "caretaker" of the home, and that because there were competing claims to the home, Jenkens could be forced to commence an interpleader action.

Jenkens subsequently filed an interpleader complaint in the Southern District of Texas to finally resolve ownership of Travis Close, Inc. and the Williamsburg home. The complaint named Groia & Company (a Canadian law firm that had represented the Felderhofs and claimed an interest in proceeds from the sale of the residence), John Felderhof, and Ingrid Felderhof as defendants. Groia and John Felderhof filed answers admitting most of the

---

[1] Ms. Felderhof also transferred to Jenkens a Lamborghini automobile that was subsequently sold by Jenkens.

factual allegations in Jenkens' interpleader complaint. Ms. Felderhof did not file an answer. The facts surrounding Ms. Felderhof's failure to file an answer are as follows.

On November 16, 2006 in the Cayman Islands, Ms. Felderhof was personally served with a packet of papers including Jenkens' complaint. The parties dispute whether these papers included a summons as required under FED. R. CIV. P. 4. Upon receiving these papers, Ms. Felderhof took them to the offices of her lawyer, John Chapman, in Grand Cayman. Chapman was out of the country and did not return until November 28. Upon return, he reviewed the papers brought to his office by Ms. Felderhof.

Subsequently, Ms. Felderhof was served with a copy of the district court's Order for Conference and Disclosure of Interested Parties. The order required counsel to appear for a pre-trial conference and file a certificate of persons or entities with a financial interest in the litigation within fifteen days. Ms. Felderhof never filed the requisite certificate.

Because Ms. Felderhof never filed an answer, Jenkens filed a motion for entry of default as to Ms. Felderhof which was granted by the district court. Jenkens, Groia, and John Felderhof then filed a joint motion for summary judgment seeking to have the court declare, inter alia, that Jenkens is the sole and lawful owner of the stock of Travis Close, Inc. and its sole asset, the Williamsburg home. The district court granted the joint motion and entered final judgment declaring Jenkens the sole owner.

After learning of the default judgment against her, Ms. Felderhof filed a motion in the district court to have the default judgment set aside pursuant to FED. R. CIV. P. 60(b)(1) and FED. R. CIV. P. 60(b)(4). Rule 60(b)(1) provides that a party may be relieved from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Ms. Felderhof argued that her neglect in failing to answer was excusable under FED. R. CIV. P. 60(b)(1) because she was never

served with a summons, or in the alternative because the summons was lost prior to her or her attorney ever seeing it; and that she never learned of her duty to answer. Rule 60(b)(4) provides that a party may be relieved from a final judgment if it is determined that "the judgment is void." Ms. Felderhof argued that the default judgment was void under FED. R. CIV. P. 60(b)(4) because she was never served with a summons, and thus, the court never had personal jurisdiction over her. After receiving briefing, affidavits, and documentary evidence, the district court summarily denied Ms. Felderhof's motion.

II

The district court's order provided no factual finding as to whether Ms. Felderhof was served with a summons. Nor did the district court address any of the factors traditionally considered in determining whether relief from a default judgment is proper under Rule 60(b)(1).

We review de novo a district court's conclusion as to whether a judgment is void for lack of personal jurisdiction under Rule 60(b)(4). See Goetz v. Synthesys Technolgies, Inc., 415 F.3d 481, 483 (5th Cir. 2005). We review the district court's denial of relief under Rule 60(b)(1) for abuse of discretion. See Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000). "Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, even a slight abuse of discretion may justify reversal." Lacy, 227 F.3d at 292. We normally review the district court's factual conclusions for clear error. See Lacy, 227 F.3d at 292 (noting that factual determinations underlying a 60(b)(1) denial are reviewed for clear error); Goetz, 415 F.3d at 483 (noting that clear error applies to factual findings related to 60(b)(4) rulings). However, in this circumstance, we analyze the district court's denial of relief under Rule 60(b)(1) and 60(b)(4) in light of the lack of findings provided by the district court.

III

A

We turn first to Ms. Felderhof's argument under Rule 60(b)(4). On appeal, Ms. Felderhof argues that the district court's judgment was void under Rule 60(b)(4) because she was not served with a summons as required under Rule 4. See FED. R. CIV. P. 4(c) ("A summons must be served with a copy of the complaint."); Recreational Props., Inc. v. Southwest Mortgage Serv. Corp., 804 F.2d 311, 314 (5th Cir. 1986) ("If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside.").[2] While the district court failed to resolve the disputed facts surrounding the service of summons, FED. R. CIV. P. 52(a)(3)[3] indicates that a district court is not required to state findings or conclusions when deciding a Rule 60(b) motion. Moreover, even where findings are specifically required at the conclusion of a bench trial, under FED. R. CIV. P. 52(a)(1), we have recognized that a remand for specific findings is unnecessary "if a complete understanding of the issues may be had without the aid of separate findings." Armstrong v. Collier, 536 F.2d 72, 77 (5th Cir. 1976). "[A] remand is often deemed unnecessary if all the evidence is documentary and the appellate court can pass upon the facts as well as the trial court, or if all the facts relied upon to support the

---

[2] Ms. Felderhof's only contention under Rule 60(b)(4) relates to her failure to receive a summons. Ms. Felderhof raises no argument that personal service of both the complaint and summons would not satisfy the process requirements of Rule 4(f)(1). Rule 4(f)(1) provides that an individual in a foreign country may be served "by any internationally agreed means of service . . . such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." FED. R. CIV. P. 4(f)(1).

Ms. Felderhof also contends that she did not receive "proper notice" of Jenkens application for default judgment pursuant to FED. R. CIV. P. 55(b)(2). However, the notice requirement of Rule 55(b)(2) only applies to parties that have "appeared" prior to the entry of a default judgment. While "we have taken an expansive view as to what constitutes an appearance under Rule 55(b)(2)," Ms. Felderhof made no contact with the court or opposing parties until after the entry of default judgment. Rogers v. Hartford Life & Acc. Ins. Co., 167 F.3d 933, 936 (5th Cir. 1999).

[3] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion." FED. R. CIV. P. 52(a)(3).

judgment are in the record and are undisputed, or if the record as a whole presents no genuine issue as to any material fact." Id. We have also stated that a remand is not necessary if "the record would not support" a finding in the appellant's favor, and if such a finding would be deemed clearly erroneous had it been made. See Kratzer v. Capital Marine Supply, Inc., 645 F.2d 477, 483 (5th Cir. 1981). Applying the above rule to determine whether a remand is necessary in this instance, we ask whether the record could support a finding in Ms. Felderhof's favor as to the service of the summons.

The evidence before the district court concerning service of the summons was as follows. Jenkens submitted a copy of a signed return of service form. Jenkens also submitted two affidavits from the process server. The process server averred that he personally served the complaint and summons on Ms. Felderhof at a Grand Cayman shopping mall on November 16, 2006. Finally, Jenkens submitted a copy of a summons directed to Ms. Felderhof that had been issued by the district court on November 14, 2006 and initialed by the process server. The process server averred that he initialed a copy of the summons upon serving Ms. Felderhof. Ms. Felderhof submitted affidavits from herself and Chapman, her attorney in the Cayman Islands. Ms. Felderhof admitted that she was served with a bundle of what looked like "legal papers" while at a shopping mall on November 16. However, she averred that she did not review the papers served on her. Instead, she took them to Chapman's office on November 16. Chapman was out of the country until November 28. Chapman averred that upon returning to his office he reviewed the papers that had been dropped off by Ms. Felderhof twelve days prior. His affidavit states that, on November 28, there was no summons amongst the papers he reviewed.

The only evidence that could support Ms. Felderhof's position is the averment by her attorney that, 12 days after service, the summons was not in the pack of papers in his office. The statement of her attorney regarding the

content of the pack of papers on November 28 does not rebut the process server's affidavit, and it does not create a material issue of fact as to whether Ms. Felderhof was served with a summons on November 16. The record cannot support a finding in Ms. Felderhof's favor, and had the district court concluded that Ms. Felderhof was not served with the summons, such a finding would have been clearly erroneous. Accordingly, the district court did not err in denying Ms. Felderhof relief from the default judgment under Rule 60(b)(4) based on her claim that she was not served with a summons.

## B

We next consider Ms. Felderhof's claim for relief from the default judgment under Rule 60(b)(1). In determining whether good cause exists to set aside a default judgment under Rule 60(b)(1) we examine the following factors: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." In re Dierschke, 975 F.2d 181, 183 (5th Cir. 1992). Courts may also consider whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default. See id at 183-84. The district court need not consider all of the above factors in ruling on a defendant's 60(b)(1) motion; "the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause.'" Id. at 184.

However, two of the above factors carry special significance. A district court has the discretion to refuse to set aside a default judgment under 60(b)(1) if the defendant "fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party." Lacy, 227 F.3d at 293. Also, if a district court finds a defendant's default to be willful, then the district court need not make any other finding. See Dierschke, 975 F.2d at 184.

The district court reached no finding as to willfulness, prejudice, or the merit of Ms. Felderhof's asserted defenses. Nor did the district court provide any indication as to whether the remaining factors favor granting or denying relief from the default judgment under Rule 60(b)(1). Again applying the above-stated rule that remand is unnecessary where the record would not support a finding in Ms. Felderhof's favor, we examine the above factors to determine whether the district court's 60(b)(1) denial may be affirmed despite the lack of specific findings by the district court.[4]

We first address whether Ms. Felderhof has presented a meritorious defense. In her motion to set aside the default judgment, Ms. Felderhof's most basic defense on the merits was to deny Jenkens' factual allegations regarding the transfer of the Travis Close stock and the Williamsburg home. Jenkens claimed that the stock and home were part of its $1 million non-refundable retainer under the Modified Agreement. Ms. Felderhof claimed that the parties reached a different agreement which provided that Jenkens held the stock and the home to secure payment of fees, and that Jenkens would return the home to her once Jenkens' fees were paid.

To support its claim to the residence, Jenkens submitted to the district court the Modified Agreement. The Modified Agreement was signed by the Felderhofs on May 16, 1997 but was intended to "memorialize[] the revised agreement [the parties] reached conceptually on May 6." The Modified Agreement does not, by its terms, refer to the stock of Travis Close or the

---

[4] Because of the drastic nature of default judgments, the Third Circuit has indicated that a district court errs if it denies a motion to set aside a default judgment under 60(b)(1) without addressing certain necessary factors. See Embasco Ins. Co. v. Sambrick, 834 F.2d 71, 73-74 (3d Cir. 1987) (reversing district court where it based its decision on a defendant's delay in answering without addressing prejudice or meritorious defense elements). While we agree that findings are useful for appellate review, they are not required under Rule 52(a), and therefore a lack of findings does not per se result in reversal or vacatur. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96-97 (2d Cir. 1993) (noting that a district court should provide specific reasons but that a lack of explanation for denying relief from default is not fatal "so long as it is possible to discern that the appropriate criteria have been satisfied").

Williamsburg home as being part of the $1 million non-refundable retainer. The Modified Agreement simply states that the retainer can be paid with "cash or other valuable assets." The Agreement states that Jenkens had received "certain assets of uncertain value" but does not identify the stock or the home as part of the "valuable assets" used to satisfy the retainer. Jenkens also provided the affidavit of Andrius Kontrimas, a Jenkens attorney, who served as Ms. Felderhof's counsel. Kontrimas averred that the stock transfer was "part of the consideration for the Modified Agreement" and that Ms. Felderhof agreed to transfer the Residence "free and clear of any liens or encumbrances." An affidavit from Joseph Groia, the Felderhofs' Canadian counsel states that "[a]t the time of entering into the agreement with Heenan Blaikie [the predecessor law firm to Groia & Company], the Felderhofs agreed to assign a non-cash asset for both the benefit of Jenkens and Heenan Blaikie. The non-cash asset was the stock of Travis Close." Jenkens submitted two stock certificates))one dated January 2, 1997 indicating Ms. Felderhof's ownership of the Travis Close stock, and another dated December 30, 1997 indicating Jenkens' ownership of the Travis Close stock. Jenkens also submitted what appears to be a blank stock transfer agreement signed by Ms. Felderhof on May 6, 1997. The blank agreement does not contain any information other than the date and Ms. Felderhof's signature. Finally, Jenkens argued that its payment of income tax on the home in 1997, and its maintenance of the home over ten years show that Ms. Felderhof intended to transfer full ownership of the Travis Close stock and the Williamsburg home.

To support the factual allegations in her defense, Ms. Felderhof presented her own affidavit, as well as letters exchanged between her and Kontrimas in 2006 regarding the Williamsburg home.[5] Ms. Felderhof's affidavit states that

---

[5] Ms. Felderhof also submitted an affidavit from her Cayman counsel, Chapman. However, because Chapman did not represent Ms. Felderhof until 1999, he provides no testimony based on

9

"Andrius assured me that my house in Virginia would be maintained by his firm and returned to me after the firm's engagement was concluded if all outstanding bills to his firm were paid in full. It was Andrius's promises to maintain the house and return it to me if and when I paid all of his firm's legal fees that led me to transfer the house to his firm." Prior to Jenkens' filing its interpleader complaint, Ms. Felderhof wrote two letters to Kontrimas. They reinforce her alleged understanding of the agreement regarding the Travis Close stock and the Williamsburg home. In the letters, Ms. Felderhof requests that Jenkens arrange to transfer the home back to her. In response to Ms. Felderhof's letters, Kontrimas wrote that "There was never a caretaker arrangement." However, his letter also states that "I did tell you that my Firm and I would do the right thing regarding Travis Close," and that "other than reimbursement of the fees, expenses, and income tax" associated with Jenkens' holding the house for the previous ten years, "my law firm is not claiming any interest in the house or proceeds of sale." His letter continues, "We have attempted to follow what I thought was the right thing to do under the terms of our agreement and current circumstances. Unfortunately, there does not appear to be an agreement with my suggested course of action." Finally, Kontrimas indicates in his letter that if a law suit was commenced, he would "likely . . . be a fact witness in the litigation to testify as to the facts surrounding the legal engagement and continuing representation." Ms. Felderhof argues that Kontrimas' letter supports her contention that there was an agreement regarding transfer of the stock and the home that did not involve the assets becoming part of Jenkens' non-refundable retainer. Ms. Felderhof also argues that Jenkens' holding the home for ten years without selling it provides circumstantial support for her

---

personal knowledge of the 1997 stock transfer. However, his affidavit does state that, "Mrs. Felderhof always told me that her understanding was that the residence would have to be returned to her after the firm's engagement was concluded if all outstanding bills to [Jenkens] were paid in full."

understanding: that Jenkens only held the home as security until all fees were paid, when it would be returned to her.

The record clearly supports the fact that Ms. Felderhof transferred the stock of Travis Close to Jenkens. However, with regard to the details of the transfer of the Travis Close stock and the Williamsburg home, the record on appeal essentially reduces to a swearing match by affidavit. Kontrimas and Groia aver that the stock and home were transferred outright to fulfill the retainer obligation set forth in the Modified Agreement, while Felderhof avers that the assets were transferred merely as security to ensure payment of fees. Ms. Felderhof's motion and the evidence submitted to the district court provided definite factual allegations, as opposed to mere legal conclusions, in support of her defense. See Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1969) (stating that a defendant must make a "clear and specific showing . . . by [a] definite recitation of facts" that the defendant has a valid defense). And her "defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993); see 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil 3d § 2697 (1998) ("The underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default."). Because Ms. Felderhof provided definite factual allegations with supporting record evidence that, if believed at trial, would lead to a result contrary to that achieved by the default, we cannot assume that the district court rested its denial of Rule 60(b)(1) relief on the lack of a meritorious defense. Cf. Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970) (noting that bald allegation, without supporting facts underlying the defense, will not sustain the burden of the defaulting party under Rule 60(b)").

Next, we note that a number of the other factors listed in Dierschke arguably cut in favor of Ms. Felderhof. Along with her potentially "meritorious" defense, Ms. Felderhof claims that she stands to suffer a "significant financial loss," because the home is currently listed for sale at approximately $1.3 million. See Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 403 (5th Cir. 1981) (recognizing that the large value of a $250,000 claim against the defendant "itself militat[ed] in favor of a full trial on the merits."). Also, Jenkens appears to present ineffectual claims of prejudice; its briefing on appeal merely refers to expected difficulties Jenkens may face if forced to proceed with further litigation. See Lacy, 227 F.3d at 293 (5th Cir. 2000) (indicating that delay, or requiring a plaintiff to prove his case does not constitute prejudice). Finally, Ms. Felderhof claims that she expeditiously responded once she learned of the default. Though it took her a month to obtain local counsel and file her motion for relief from judgment, she presented affidavit testimony from herself and Chapman indicating that she began her search for local counsel immediately but ran into a number of unexpected difficulties including slow responses from the local counsel she sought, and conflicts of interest that prevented others from representing her in the matter. The district court did not address any of these factors.

Finally, we reach the issue of willfulness. If Ms. Felderhof's default was willful then the district court's denial of 60(b)(1) relief may be affirmed on that ground alone. See Dierschke, 975 F.2d at 184-85. Again, the district court made no finding as to willfulness, so in considering whether a remand is necessary, we must ask whether the record precludes a finding in Ms. Felderhof's favor.

We have already determined that the record precludes Ms. Felderhof from establishing she was not served with a summons. But this fact is not dispositive of Ms. Felderhof's wilfullness. We have recognized that even where a defendant mistakenly concludes that he was not served with process, the defendant's

default may not be willful. See Lacy, 227 F.3d at 292-93 (Where defendant mistakenly assumed it was not served but maintained contact with plaintiff concerning matter of litigation, default was not willful.). On the other hand, we have affirmed a lower court's finding of willfulness where the lower court determined that the defendant simply "chose to play games with the court" and "chose to make a decision that he hadn't been served when, in fact, he had." Dierschke, 975 F.2d at 184. In sum, perfection of service is not determinative))the defendant's knowledge of the perfected service, and the defendant's actions post-service also play a role in measuring the willfulness of a defendant's default.

Ms. Felderhof contends that even if there was a summons in the papers served on her, it was inadvertently lost; and thus, neither she nor her counsel ever knew of the duty to answer the complaint. She contends that her claims to ownership of the Williamsburg home, evidenced in her letters to Kontrimas, suggest that she would not allow a default judgment to be entered against her because such a judgment would deprive her of any interest in the home. She also claims that her expeditious forwarding of all legal papers to her attorney shows that she did not intend to avoid litigation or "play games" with the court.

Nonetheless, even were the summons never seen, Ms. Felderhof received other forms of notice of the interpleader action.[6] Chapman saw the complaint in his office twelve days after Ms. Felderhof was served. Ms. Felderhof also admits that she later received an order for a pre-trial scheduling conference. She and Chapman aver that they intended to be at the conference (which never occurred because of the entry of default), because they assumed that the

---

[6] Jenkens contends that Ms. Felderhof wilfully evaded service, thus suggesting willfulness in her failure to answer. Even were we to accept Jenkens' claims of willful evasion of service (which Ms. Felderhof disputes), intentionally evading service is "insufficient to make a defendant's failure to answer willful," Keegel v. Key West & Caribbean Trading Co., Inc., 627 F.2d 372, 374 (D.C. Cir. 1980), because the duty to answer only arises after service has been perfected. c.f. Lacy, 227 F.3d at 292 n. 5 (noting that willful evasion of service is not grounds to support an entry of default).

conference would yield greater detail as to what was required of Ms. Felderhof in light of never seeing the summons nor receiving further instructions for answering the complaint. As the conference never occurred, Ms. Felderhof did not have the opportunity to make good on what she now avers to have been her intent to attend. Still, she contends that her plan to attend supports her claim that she did not seek to avoid litigation of the matter. Finally, despite receiving the complaint and the order for conference, the only recourse actually taken by Ms. Felderhof prior to entry of default was to check the local court registry in Grand Cayman for any pending filings against her.

Because there are no countervailing equities (i.e., because Jenkens has not presented a legitimate claim of prejudice that would arise from setting aside the default), "any doubt should, as a general proposition, be resolved in favor of [Ms. Felderhof] to the end of securing a trial upon the merits." Gen. Tel. Corp. v. Gen. Tel. Answering Serv., 277 F.2d 919, 921 (5th Cir. 1960). While there is evidence suggestive of wilfulness on the part of Ms. Felderhof, resolving doubts in Ms. Felderhof's favor, we do not believe the record conclusively shows that her default was willful. Shortly prior to the filing of the complaint, Ms. Felderhof engaged in regular correspondence with Jenkens concerning the dispute over the Williamsburg residence. As the record reflects her contemporaneous intent to claim ownership of the Williamsburg residence, it would be quite strange for Ms. Felderhof to wilfully default when doing so would destroy her interest in the home. Moreover, assuming a summons was served, resolving doubt in Ms. Felderhof's favor, we also must assume that neither she nor her attorney ever saw the summons, and that they were legitimately confused as to their responsive duties under the circumstances. Finally, while the initial scheduling conference never occurred, we cannot entirely discount the sworn affidavit testimony from Ms. Felderhof and her attorney that they planned to attend the pre-trial conference under the mistaken assumption that the conference would

yield further guidance with respect to the interpleader complaint received from Jenkens. While Ms. Felderhof was not the model of a properly responsive defendant, we cannot say that this sparse record requires a court to find her default willful.

As noted above, a number of the factors relevant to a good cause determination under Rule 60(b)(1) appear to cut in Ms. Felderhof's favor)) and the record does not indisputably support a denial of Rule 60(b)(1) relief on "willfulness" grounds. While the record does not require a finding of willfulness, neither does the record preclude such a finding. Without guidance from the district court as to the basis for its Rule 60(b)(1) decision, we cannot determine whether the district court abused its discretion; and we are, thus, constrained to vacate this portion of the district court's order. See Enron Oil, 10 F.3d at 96-97 (noting that a district court's lack of findings or explanation in support of its Rule 60(b) denial may "defeat intelligent appellate review").

IV

For the foregoing reasons, we AFFIRM the district court's denial of relief from default judgment under Rule 60(b)(4). We VACATE the district court's denial of relief under Rule 60(b)(1) and REMAND. If, on remand, the district court determines that its denial of Ms. Felderhof's motion under Rule 60(b)(1) is supported by the current record, then the district court need only issue a more detailed ruling sufficient to resolve that which currently hinders our review. Otherwise, the district court is instructed to institute further proceedings consistent with this opinion.